IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEPHANIE HEARD & <br> AMOS HEARD, <br><br> Plaintiffs, <br><br> v. <br><br> STATE FARM LLOYDS, <br><br> Defendant. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | Civil No. 3:23-CV-02222-K |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant State Farm Lloyds's ("State Farm") Motion for Summary Judgment (the "Motion") along with its Brief and Appendix in Support (Doc. Nos. 31-33), and Plaintiffs Stephanie Heard and Amos Heard's ("the Heards") Response (the "Response"), Brief and Appendix in Support (Doc. Nos. 35-37), to which State Farm filed its Reply (Doc. No. 38). After careful consideration of State Farm's Motion, the Heards' Response, State Farm's Reply, the Parties' cited evidence and the relevant law, the Court finds the Heards fail to establish a genuine dispute of material fact on one or more essential elements for each of their claims. Accordingly, the Court **GRANTS** State Farm's Motion for Summary Judgment, and **DISMISSES** all the Heards' claims with prejudice. A final judgment will issue separately.

**I. Background**

On February 19, 2021, the Heards were living in their home in Dallas insured by State Farm, when they suffered a deep winter freeze. Doc. No. 33 at 94-95 (all references to ECF pages). The freeze led the Heards' home to suffer numerous burst pipes, and cause water damage in their kitchen, bath, and several other rooms. *Id.* at 94. The Heards made plumbing repairs themselves, moved to temporary housing, and reported the claim to State Farm. *Id.* at 95. State Farm inspected the Heards' home March 24, 2021, and estimated the cost to repair the Heards' home as $2,933.86. *Id.* at 90. State Farm's adjusters noted they observed "no water damage appeared on walls or flooring" and estimated repairs would take the Heards six weeks. *Id.*

Over the following year, State Farm several times re-appraised the Heards' damage and authorized water-related wallboard removal, water-related asbestos removal, hired an engineer to assess the Heards' foundation for water-related damage, and issued numerous supplemental payments, ultimately totaling $189,706.98 for the Heards' necessary repairs, additional living expenses and temporary storage. *Id.* at 273.

Ultimately, the Heards' repairs were never completed, and the Heards brought a state court action against State Farm for breach of contract as well as statutory violations and common law torts. *Id.* at 10-95; Doc. No. 1-3 at ¶10-27. State Farm removed to this Court and moved for summary judgment. Doc. No. 1; Doc. No. 31.

**II. Standard of Review**

The court "shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

On February 19, 2021, the Heards were living in their home in Dallas insured by State Farm, when they suffered a deep winter freeze. Doc. No. 33 at 94-95 (all references to ECF pages). The freeze led the Heards' home to suffer numerous burst pipes, and cause water damage in their kitchen, bath, and several other rooms. *Id.* at 94. The Heards made plumbing repairs themselves, moved to temporary housing, and reported the claim to State Farm. *Id.* at 95. State Farm inspected the Heards' home March 24, 2021, and estimated the cost to repair the Heards' home as $2,933.86. *Id.* at 90. State Farm's adjusters noted they observed "no water damage appeared on walls or flooring" and estimated repairs would take the Heards six weeks. *Id.*

Over the following year, State Farm several times re-appraised the Heards' damage and authorized water-related wallboard removal, water-related asbestos removal, hired an engineer to assess the Heards' foundation for water-related damage, and issued numerous supplemental payments, ultimately totaling $189,706.98 for the Heards' necessary repairs, additional living expenses and temporary storage. *Id.* at 273.

Ultimately, the Heards' repairs were never completed, and the Heards brought a state court action against State Farm for breach of contract as well as statutory violations and common law torts. *Id.* at 10-95; Doc. No. 1-3 at ¶10-27. State Farm removed to this Court and moved for summary judgment. Doc. No. 1; Doc. No. 31.

**II. Standard of Review**

The court "shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." FED. R. CIV. P. 56(a).  A genuine dispute of a material fact is a dispute about a fact which "might affect the outcome of the suit" under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  Thus, summary judgment is proper when it is clear from the evidence cited by the parties to the court, that as a matter of law, a trial would be unnecessary. *Id*. at 255.  To show there is a genuine dispute, or lack thereof, the parties must cite to "particular parts of materials in the record." FED. R. CIV. P. 56(c).  At summary judgment, it is a "fundamental principle" that the Court is to view the evidence in light most favorable to the non-movant and draw all "reasonable inferences" in their favor. *Tolan v. Cotton*, 572 U.S. 650, 660 (2014).  The court must disregard "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions and legalistic argumentation." *TIG Ins. Co. v. Sedgewick James of Washington,* 276 F. 3d 754, 759 (5th Cir. 2002).

### III. Analysis

The Heards claim that State Farm breached its contract by failing to pay for (i) asbestos removal, (ii) foundation repairs, (iii) additional living expenses, and (iv) replacement cost benefits.  Doc. No. 36 at 6-10.  In addition, the Heards allege State Farm violated the Texas Prompt Payment of Claims Act, made misrepresentations and committed bad faith under the Texas Insurance Code while also committing common law torts of bad faith, fraud, and engaging in a conspiracy to commit fraud.  *Id.*

#### A. Breach of contract

In any action to enforce an insurance policy, the insured must plead and prove the facts necessary to establish coverage. *Seger v. Yorkshire Ins. Co., Ltd.*, 503 S.W.3d 388, 400 (Tex. 2016). Further, it is "essential that the insured produce evidence which will afford a reasonable basis for estimating the amount of damage or proportionate part of damage caused by a risk covered by the insurance policy." *Travelers Indem. Co. v. McKillip,* 469 S.W.2d 160, 163 (Tex. 1971). Accordingly, when "covered and non-covered events combine to cause the damage, the insured must segregate between the damage attributable to the covered event and the damage attributable to other causes." *Landmark Partners, Inc. v. Western World Ins.,* 2023 WL 8940812, at *2 (Tex. App.—Fort Worth Dec. 28, 2023, no pet.). Since establishing which losses are covered is "central to the claim for coverage," an insured's failure to introduce any evidence to segregate the contribution from covered and uncovered loss is "fatal" to their claim. *See Wallis v. United Servs. Auto. Ass'n,* 2 S.W.3d 300, 303-04 (Tex. App.—San Antonio 1999, pet. denied). If an insured fails to cite proper summary judgment evidence to meet its two burdens to establish coverage and segregate any covered and uncovered loss, the insured fails to establish a genuine dispute on an essential element, and summary judgment for the insurer is proper. *See Certain Underwriters at Lloyd's of London v. Lowen Valley View, LLC,* 892 F.3d 167, 170 (5th Cir. 2018); *Feiss v. State Farm Lloyds*, 392 F.3d 802, 807 (5th Cir. 2004). The Heards allege several theories of breach by State Farm, but for each alleged breach, the Heards fail to introduce evidence necessary

4

to establish a genuine dispute on all elements required for coverage, and for several, fail to introduce evidence to segregate their loss.

1. **Asbestos**

The Heards claim that State Farm breached its contract by failing to pay $9,357.72 for asbestos removal which the Heards allege was covered by their policy. The summary judgment evidence shows that the Heards had their demolition contractor complete both water related and non-water related asbestos removal, and in this action the Heards seek payment for the non-water related asbestos removal. The Heards fail to cite any evidence that the non-water related removal was in fact a covered loss, and further fail to cite evidence to reasonably segregate the covered removal costs from the uncovered removal costs as required. Since the Heards fail to cite evidence to raise a genuine dispute on these essential elements of coverage, the Court must grant summary judgment for State Farm on the Heards' asbestos claim.

The Heards' demolition contractor submitted two invoices totaling $13,061.37 directly to State Farm to remove water-damaged wallboard containing asbestos from the Heards' home. Doc. No. 33 at 328-42. State Farm paid these invoices. *Id*. at 273. The Heards' contractor also submitted two invoices totaling $9,357.72 directly to the Heards, the first, for "Non-Insurance Asbestos Abatement," and the second, a "Supplement for Asbestos Out of Pocket Work." *Id*. at 592-93.

In her deposition, Ms. Heard indicated the Heards paid these two invoices, and never submitted either to State Farm. *Id*. at 451, 77:18 & 80:12-13. Further, State

Farm's claim file notes Ms. Heard stated to State Farm's adjuster on July 13, 2021, that she "received a bill from contractor for asbestos remediation. [Ms. Heard] said they told her it is her out of pocket expense because these were rooms that were not affected by the water damage. [Ms. Heard] said they decided to go ahead and have all asbestos removed while the contractor was doing the insurance related work." *Id*. at 77. State Farm's claims file further indicates its adjuster then "advised [Ms. Heard] if revisions are made to her bill as she is requesting and she thinks it is related to the claim, I would be happy to review for coverage. [Ms. Heard] understands, if there was no water damage and no reason to disturb the unaffected areas, that would be an out-of-pocket expense. She said she understood." *Id.*

The Heards' now allege that the $9,357.72 they paid to their contractor for "Non-Insurance Asbestos Abatement" and "Supplement for Asbestos Out-of-Pocket Work" should be paid for by State Farm. The Heards allege that State Farm should have paid these invoices because it was necessary to remove all their home's asbestos, beyond that which they can show was directly impacted by the water loss. The Heards fail to cite evidence to raise a genuine dispute of material fact that they are entitled to this payment for non-water related asbestos removal, for two reasons.

**(a) The Heards fail to cite evidence the loss is covered.**

The Heards fail to cite any evidence that the additional cost of this additional non-water related asbestos removal was a covered loss; thus, they fail to introduce the evidence necessary to establish a genuine dispute of material fact and survive summary

judgment. In particular, the Heards offer no evidence that this further asbestos loss was covered. Further, the only evidence the Heards attempt to offer that the further asbestos removal was a covered loss does not support the proposition for which it is cited. As evidence of coverage, the Heards cite to an expert declaration which merely asserts that the Heards needed to "remove all asbestos from the affected areas." *Id*. at 6, ¶¶1-2,5. That State Farm was required to remove all asbestos from the affected areas is not in dispute. However, the Heards do not cite any evidence to establish *which* areas of their home were affected by the water loss, where asbestos removal would then be properly covered by the policy. Without citing any evidence that this further asbestos removal was in areas affected by the covered water loss, the Heards have introduced no evidence to establish that their claim to be entitled for coverage of additional asbestos removal is in a fact, a matter in genuine dispute.

Further, the record shows the Heards' expert could not opine on what asbestos removal was from affected areas, and thus what removal would be covered under the policy, because he did not have the information necessary on which to base such an opinion. In particular, the Heards' expert first visited the home nearly two years after the asbestos removal had been completed. Doc. No. 33. at 483, 34:6-9. He further testified that he did not have any photos of what the property looked like right after the water leak, prior to the asbestos removal, to compare to the gutted state in which he found the home at the time of his inspection. *Id*. at 483, 34:21-23. In addition, the Heards' expert stated he did not review any "specific diagrams" or "asbestos

7

protocol that would show… where the [asbestos remediation] was specifically done." *Id*. at 492, 73:24-74:3. Critically, the Heards' expert also stated he did not have a "breakdown of the difference" of what wallboard was removed just for asbestos remediation versus the wallboard that was removed since it had been damaged by water. *Id*. at 483, 36:25-37:1. Accordingly, the record shows the Heards' expert did not have any basis to offer an expert opinion which could be admissible as evidence under Federal Rules of Evidence 702 to establish what asbestos removal related to water-loss, and thus what asbestos removal should have been covered. Thus, since the Heards' expert did not, and could not, testify to what asbestos removal resulted from the water loss, and ought to have been covered, the Heards fail to cite evidence necessary to establish every element of their claim for further asbestos coverage.

**(b) The Heards fail to cite evidence to segregate the covered and uncovered loss.**

In addition, the evidence in the record shows that at least some of the asbestos removal expense was not a covered loss, and this implicates the burden for the Heards to segregate their losses under the concurrent causation doctrine, which they fail to meet. As noted above, State Farm cites adjuster notes to evidence that Ms. Heard reportedly stated to State Farm's adjuster that asbestos was removed from "rooms that were not affected by the water damage." Doc. No. 33. at 77. Ms. Heard's admissions are corroborated by comparing the invoice from the Heards' demolition contractor for water-related wallboard removal with the post-demolition repair estimates prepared by

8

the Heards' expert. The demolition contractor invoiced State Farm to remove 1,523 square feet of water-damaged wallboard in 6 rooms. *See Id.* at 330-33 & 339-41. In contrast, the Heards' expert later determined that 4,891 square feet of wallboard was removed when the home was gutted and wallboard was removed from all of the eight rooms, two closets, and one hallway in the Heards' home. Doc. No. 37 at 13-38. In her deposition, Ms. Heard suggested that some of this additional wallboard removal may also have been due to mistakes by the Heards' own demolition contractors. *Id*. at 448, 67:13-14. Specifically, Ms. Heard testified "there was additional damage that occurred due to the job that the water mitigation and asbestos removal guys did to the prop[erty]." *Id*. The summary judgment evidence from Ms. Heard's deposition, corroborated by records from State Farm, the Heards' contractor and the Heard's expert, shows that at least some of the Heards' asbestos removal cost was an uncovered loss. As a result, the concurrent causation doctrine applies and the Heards must produce evidence that to reasonably allocate the proportionate share of its loss to covered and uncovered amounts. The Heards' failure to cite any evidence to reasonably segregate their loss is fatal to their asbestos claim. *See Wallis,* 2 S.W.3d at 303-04.

For these two reasons, the Heards fail to raise a genuine dispute of material fact as to their asbestos claim, and accordingly, the Court grants summary judgment for State Farm on the Heards' asbestos claim.

## 2. Foundation

The Heards claim that State Farm breached its contract by failing to pay $10,510.05 for foundation repairs which the Heards allege were covered under their policy. The summary judgment evidence shows that the Heards' sought coverage for foundation repairs allegedly resulting from their covered loss; but it is uncontroverted that the Heards' policy plainly excludes coverage for just the sort of foundation losses which the Heards sought to cover under their policy. Since the contract bars coverage for the Heards foundation claim as explained below, the Heards fail to establish a genuine dispute of material fact, and the Court must grant summary judgment for State Farm on the Heards' foundation claim.

The Heards and their expert assert that the water loss caused the foundation loss. Doc. 36 at 17-18. However, two separate policy provisions exclude the Heards' foundation loss, as asserted by the Heards, from coverage under the policy. *See Burman v. State Farm Lloyds*, 2019 WL 1493357, at *2-3 (W.D. Tex. Apr. 4, 2019).

First, the Heards cite their expert who asserts that "significant damage to the [Heards'] foundation… [was] caused by the freeze event, which led to structural shifts, cracking, and other items requiring immediate attention." Doc. No. 37 at 4, ¶6. These statements are significant, for under the Heards' policy, the provision for "Losses Not Insured 1(k)" includes "any loss… that consists of… or is directly and immediately caused by… *cracking*… of… foundations… regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, arises from natural or external

10

forces, or occurs as a result of any combination of [Losses Not Insured]." Doc. No. 33 at 377-78(emphasis added). Foundation losses which consist of, or are caused by, cracking are excluded by the Heards' policy. Accordingly, coverage is excluded for at least some of the Heards' foundation loss, to the extent it either consists of, or was caused by, cracking, as the Heard's own expert asserts.

Second, the Heards assert that "100% of the losses were caused by the freeze/water loss" which led to a "a shift of the property's foundation." Doc. 36 at 17, ¶2. Specifically, the Heards' Response cites the deposition of their expert who opined the foundation loss was caused by "substantial water washout," with loss caused by "water flowing in an area that's not supposed to have water flowing in it." *Id*. at 18, ¶¶1-2. These statements are significant, for under the Heards' policy, under "Losses Not Insured 2(b)… we will not pay for, under any part of this policy, any loss that would have not occurred in the absence of any one or more of the following excluded events… Earth Movement, meaning the… shifting… of earth… all regardless of whether combined with water… Earth movement includes but is not limited to… mudflow… subsistence… erosion." Doc. No. 33 at 382-83. This provision further provides "we will not pay for such loss regardless of… the cause of the excluded event, or other causes of loss… whether other causes acted concurrently… whether the event occurs abruptly or gradually… [or] arises from any natural or external forces…" *Id*. Thus, as the Heards assert their losses were caused by "a shift of the property's foundation" due to "substantial water wash-out," the Earth Movement exclusion

11

applies.  The Court notes that "washout" is commonly defined as "the washing away of soil, earth, rocks, etc. by a sudden, strong flow of water".  *Washout*, WEBSTER'S NEW WORLD COLL. DICTIONARY (4th Ed. 2010).  A "washing away of earth" is plainly excluded by the Earth Movement exclusion, and the Heards' foundation loss, to the extent caused by washout as the Heards assert, is excluded by their policy.  *See Thomas v. State Farm Lloyds*, Civ. Act. No. 3:15–CV–1937–B, 218 F. Supp. 3d 506, 516-518 (N.D. Tex. 2016)(Boyle, J.).

For these two reasons the summary judgment record shows that the foundation loss, to the extent it consists of, or was caused by, cracking, or resulted from wash-out, both as alleged by the Heards, was excluded by their policy.  If there was any other foundation loss that might not have been excluded, the Heards failed to cite specific evidence to identify it.  Further, since the evidence shows that at least some of the Heards' foundation loss was excluded, the Heards' failure to produce any evidence that could reasonably segregate their foundation loss between excluded and non-excluded loss, is fatal to their claim under the doctrine of concurrent causation.  *See Wallis,* 2 S.W.3d at 303-04.

Since the Heards fail to cite evidence to raise a genuine dispute of material fact relating to their policy's coverage for their foundation loss, the Court must grant State Farm's motion for summary judgment on the Heards' foundation claim.

3. **Additional living expenses**

State Farm moves for summary judgment on the Heards' claim that the insurer failed to pay for all the Heards' covered additional living expenses on the basis the Heards failed to introduce evidence to establish they were entitled to any further amount beyond that which they were paid. The summary judgment record shows that State Farm paid the Heards $63,882.51 in additional living expenses to cover a period of nearly eighteen months, from the date of loss in February 2021 to August of 2022. Doc. No. 33 at 273. The Heards claim that State Farm breached their contract by refusing to pay the Heards the $4,905.49 for additional living expenses which remained within their coverage limit upon State Farm's closing of their claim. *Id*. at 348, ¶2. However, the Heards fail to cite any evidence establishing that they were entitled to further payment for additional living expenses, and as a result, failed to establish a genuine dispute of material fact.

The Heards' policy contains a provision for "Additional Living Expense" which states "when a loss of use causes the residence premises to become uninhabitable, we will pay the reasonable and necessary increase in cost incurred by an insured to maintain their normal standard of living for up to 24 months. Our payment is limited to incurred costs for the shortest of… the time required to repair or replace the premises…" *Id.* at 374. Thus, the Heards were entitled to additional living expenses only for the time required for the Heards to repair their home.

State Farm cites deposition testimony from the Heards' own expert, who stated the Heards could have completed repairs to their home in three to four months. *Id*. at 488, 57:13. In their Response, the Heards acknowledge their expert's statements, but ask the Court to disregard them, based on general allegations that State Farm's actions delayed them from timely making repairs. Doc. No. 36 at 19. These sort of conclusory allegations and unsubstantiated assertions are not proper summary judgment evidence which the Court may consider. *See TIG Ins. Co. v. Sedgewick James of Washington,* 276 F. 3d 754, 759 (5th Cir. 2002).

Given the Heards' failure to cite any summary judgment evidence that would either controvert their expert or otherwise raise a genuine dispute of material fact that they were entitled to further coverage for additional living expenses beyond what State Farm paid, the Heards have failed to cite the evidence necessary to avoid summary judgment on their claim for additional living expenses. Accordingly, the Court must grant summary judgment for State Farm on this element of the Heards' claim.

### 4. Replacement cost benefits

The Heards claim State Farm breached its contract by failing to pay them the replacement cost benefits to which they allege they were entitled. The summary judgment evidence shows that State Farm authorized the Heards to receive up to $22,410.60 in replacement cost benefits for "the covered additional amount [the Heards] actually and necessarily spend to repair or replace the damaged part of the property… when the repair or replacement is actually completed." Doc. No. 33 at 216,

384-85.  This further sum would have been in addition to the actual cash value of their covered loss of $88,271.76 which State Farm had already paid for the Heards to repair their home*.  Id*. at 216.  However, the Heards' policy also states, "to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement within two years after the date of loss."  *Id*. at 384-85.

State Farm cites evidence that the Heards did not complete their covered repairs within two years of the date of loss, and accordingly, the Heards' eligibility for the replacement cost benefit expired per the contract's terms.  *Id*. at 13, 384-85 & 465, 134:6-138:22.  The Heards' Response does not cite evidence to controvert these facts, and without citation to any authority for support, asks the Court to disregard the contract's plain language.  Doc. No. 36 at 21-23.  The Court will not do this.

Accordingly, the Heards have failed to raie a genuine dispute of material fact for an element essential to their claim, and the Court must grant summary judgment for State Farm on the Heards' claim for replacement cost benefits.

### 5. Other remaining contractual disputes

State Farm moved for summary judgment on the Heards' entire breach of contract claim.  The Heards generally assert in their Response that in addition to the contractual disputes specifically addressed above, there are "other scope and pricing disputes" remaining relating to the Heards' February 19, 2021 winter freeze claim.  Doc. No. 36 at 13, ¶1.  However, the Heards fail to cite any evidence to raise a genuine issue of material fact relating to any other contract disputes emerging from the February

15

19, 2021 claim, as they must to avoid summary judgment. FED. RULE. CIV. P. 56(c)(1)(a). Accordingly, the Court grants summary judgment for State Farm on these other unspecified coverage disputes as well.

In summary, since the Heards have failed to raise a genuine issue of material fact on at least one element of each of the bases under which they have alleged this breach of contract claim relating to the February 19, 2021 freeze, the Court must grant summary judgment on the Heards' breach of contract claim in favor of State Farm.

## B. Extra contractual claims

### 1. Texas Prompt Payment of Claims Act

State Farm challenges the Heards' claim that the insurer violated the Texas Prompt Payment of Claims Act (the "TPPCA"). In their Response, the Heards acknowledge that State Farm met the TPPCA's claim acknowledgment and investigatory deadlines, but claim State Farm violated the TPPCA by delaying payment while State Farm "disput[ed]" their claim. Doc. No. 36 at 25 ¶¶1-2. Given the Court's conclusions on the Heards' breach of contract claim, the Heards cannot establish that State Farm's acts were improper, and thus cannot prevail on their TPPCA claim. Accordingly, the Court must grant summary judgment on the Heards' TPPCA claim in favor of State Farm. *See Barabara Techn. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 824 (Tex. 2019) (TPPCA penalties "do not apply in a case in which it is found as a result of arbitration or litigation that a claim received by an insurer is invalid and should not be paid by the insurer") (citing TEX. INS. CODE § 542.058(b)).

16

## 2. Breach of duty of good faith

State Farm asserts the Heards fail to cite any evidence to establish a genuine dispute that State Farm committed common law or statutory bad faith in handling the Heards' claim. In their Response, the Heards claim State Farm committed bad faith by "underestimating the scope of necessary repairs" and "underpay[ing] damages." Doc. No. 36 at 26, ¶3 & 27, ¶3. Given the Court's conclusions on the breach of contract claim, the Heards cannot establish that State Farm underestimated their claim or underpaid their damages and thus cannot prevail on their bad faith claims. *Progressive Cnty. Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919 (Tex. 2005). Nor did the Heards cite evidence that State Farm failed to conduct a reasonable investigation, or denied or delayed payment of the Heards' claim when its liability was reasonably clear. *See Universe Life Ins. Co. v. Giles,* 950 S.W.2d 48, 56 (Tex. 1997); *Arnold v. Nat'l Cnty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987). Further, the Heards fail to cite any evidence that State Farm "knew its actions were false, deceptive, or unfair" as required for an extra-contractual award. *Minn. Life Ins. Co. v. Vasqez*, 192, S.W.3d 774, 775 (Tex. 2006). The Heards cite no evidence to establish they suffered injury independent of their policy claims. *See Menchaca v. State Farm Lloyds,* 545 S.W.3d 796, 813 (Tex. 2018). At most, this was a "bona fide coverage dispute," which is not bad faith under Texas law. *See State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998). Finally, for the same reasons the Heards have failed to establish a common law bad faith claim, their statutory bad faith claim fails as well. *See Robinson v. State Farm Fire*

17

& *Cas. Co.*, 13 F.3d 160, 162 (5th Cir. 1994). Accordingly, the Court must grant summary judgment on both the Heards' common law and statutory bad faith claims in favor of State Farm.

### 3. Fraud, conspiracy and misrepresentation claims

State Farm asserts the Heards fail to cite any evidence to establish a genuine dispute that State Farm committed fraud, conspired to commit fraud, or made unlawful misrepresentations in the handling of the Heards' claim. The Heards' Response fails to cite specific evidence necessary to support any of these claims, and, thus, the Heards fail to establish these claims are a matter of genuine dispute. Further, given the Court's conclusion regarding the Heards' breach of contract claims, the Heards cannot raise a genuine dispute of material fact relating to essential elements required for each of these extracontractual claims. Finally, the Court notes, that in any case, an insurers' "post-loss communications cannot serve as a basis for misrepresentation claims under common law fraud, the Texas Deceptive Trade Practices Act, or the Texas Insurance Code." *Gooden v. State Farm Lloyds*, Civ. Action No. 4:20-CV-00698-O, 2021 WL 7906860, at *3 (N.D. Tex. May 11, 2021)(O'Connor, J.). For these reasons, the Court must grant summary judgment in favor of State Farm on the Heards' claims for fraud, conspiracy, and misrepresentation.

## IV. CONCLUSION

For the foregoing reasons, the Court finds the Heards fail to establish a genuine dispute of material fact relating to essential elements of their claims for breach of

contract, violations of the Texas Prompt Payment of Claims Act and the Texas Insurance Code as well as their common law claims for bad faith, misrepresentation, fraud and conspiracy relating to their insurance loss resulting from the winter freeze on February 19, 2021. Accordingly, the Court **GRANTS** State Farm's Motion for Summary Judgment, and **DISMISSES** with prejudice all the Heards' pending claims brought in this action. A final judgment will issue separately.

SO ORDERED.

Signed February 6th, 2025.

_Ed Kinkeade_
ED KINKEADE
UNITED STATES DISTRICT JUDGE